The next case on the docket today is People v. Prante. That's agenda number 127241. Counsel for Pond, are you ready? Identify yourself for the record. Thank you, Your Honor. May it please the court. I'm Assistant Attorney General Eric Levin on behalf of the people of the state of Illinois. The circuit court here correctly denied defendant leave to raise in a successive post-conviction petition both his due process and his actual innocence claims. I'd like to be clear at the beginning that the people accept, at least for purposes of the leave-to-file stage, that the type of bite-mark evidence presented at defendant's trial has since been deemed discredited and unreliable by the scientific community. We don't dispute that, at least for present purposes. The question here, however, is whether a defendant can make the required showing of prejudice or the required showing of conclusivity required to prevail on either of his claims. And our position here is he cannot do either. He can't show the prejudice required to make out a due process claim because the bite-mark evidence presented here simply wasn't of such critical significance to the verdict that it undermined the fundamental fairness of the entire trial. And he can't establish the conclusivity required to meet the actual innocence standard, but he can't show that without that bite-mark evidence, it's more likely than not, than no reasonable jury would have convicted him. Kagan, Mr. Levin, does the State concede that the bite-mark analysis does not meet the Frey test? Levin, Your Honor, I'm a little reluctant to answer that because I just want to explain why. I think it's a little unclear if the question whether the bite-mark evidence, as presented at this trial in 1983, would meet the Frey test. And I think it's undisputed by the defendant here that at the time of trial, this was generally accepted in the scientific community. So at that time, it would have met the Frey test had it been subject to Frey, had it been litigated. The question whether whatever remains of bite-mark science might be able to pass the Frey test today, we don't know that because we won. We don't know what type of evidence a forensic dentist would, you know, offer today. It's clear that they wouldn't make the types of claims they made in 1983. They wouldn't be able to, and this didn't happen here, but in many other cases, you have situations where dentists purported to positively identify a particular person to the exclusion of all others as the biter. And that, it's clear that that is no longer acceptable or accepted in the community and wouldn't be able to be presented today. That type of evidence wasn't presented here. Do you concede that Frey applies to this type of evidence? Again, I think it's not entirely clear. The Frey test asks whether or not this is scientific evidence. And so I think this court's explained in People v. McCown that that means does it rely on scientific methodologies or principles or scientific tests. The dentists here testified that at the time, there were no published standards guiding bite-mark testimony, that instead it was purely based, it was done on a case-by-case basis based on the training and experience of the particular dentist. It's arguable that that wouldn't be deemed scientific evidence under the McCown test. It would instead be something based on observations and experience. Again, I do think it's important to note a few things, though, about the Frey issue that I don't think the defendant is disputing here. One, he did not raise a Frey claim in his motion for leave to file a successive post-conviction petition. And it's likely he didn't do so because Frey is not a constitutional claim. Frey is a rule of Illinois evidence law, and post-conviction relief is only available to defendants on the basis of constitutional errors. So he instead raised a due process claim. And that's how it was litigated in the trial court. That's how it was litigated before the appellate court. The appellate court even noted in its opinion that the parties had not presented any substantive analysis on the Frey question. And yet the appellate court instead reached out to decide that issue, which wasn't briefed, and which couldn't have provided the defendant relief in any event. Based upon that, are you asking us to vacate that portion of the opinion? Yes, Your Honor. At the very least, we would ask the court to vacate that part of the lower court's opinion. And there is precedent for this court to do so. It did so in People v. Bass, which we cite in our reply brief, where it basically, you know, excised certain portions of an appellate court opinion when the appellate court reached out to decide, improperly reached out to decide issues. So at the very least, we would ask the court to vacate that portion of the appellate court's opinion, and instead conduct the due process analysis that the appellate court itself should have conducted. And that requires the court to ask, did the bite mark evidence, even accepting that it's now been deemed unreliable and would not have been, would not be presented at trial today, what the court has to ask is, was that evidence of such crucial, critical, highly significant, such a highly significant factor in the verdict that it rendered the entire trial fundamentally unfair? And I think there's three reasons that, especially when looked at together, show that the answer to that question is no. The first is that the bite mark evidence that was presented here was of relatively limited scope. This is not a case where the dentist purported to positively identify the defendant as the biter. They instead basically made two claims. They said, one, that these marks on the victim, Carla Brown's shoulder, were human bite marks, and, two, they said that those marks were consistent with the defendant's teeth, or the defendant could have made the marks, but they didn't purport to say he did make the marks. And so that distinguishes this case from the Chaney case out of Texas or the Howard case out of Mississippi. Yeah, I don't understand that. If they say it's consistent with the defendant's bite, isn't that a claim by, accepted by the jury as coming from an expert saying that the bite, is consistent with the defendant's bite marks? I mean, what kind of evidence is that? And if it's not scientific evidence, how does that come in today? You know, would you even allow evidence like that? A person just getting up on a stand and saying, I've looked at the bite marks and they're consistent. What kind of evidence is that? Would that even be allowed? Well, I'm not sure that it would be allowed today, Your Honor, but again, the question here is whether, we're accepting, we're putting that evidence to the side. Our argument is simply that even removing that evidence, the remaining evidence of guilt was so strong that this wasn't a due process violation. And I would clarify here that... Again, it worries me, but that came into evidence, presented to the jury. And you think that we can presume that that didn't mean much to the jury when that evidence came in? I mean, that's pretty strong evidence, I guess, from the state's point of view, isn't it? Well, I would have two responses to that. The first is, I think it's not as strong as you might think, because it was not the type of claim that we have in these other cases. For instance, in Howard, where the dentist said that this was an identical match and he was without a doubt the biter. In Cheney, the dentist testified that the defendant's teeth were a perfect match and there was a one-in-a-million chance that somebody else could have done it. In the Egge case out of the Sixth Circuit, the dentist said that of the three-and-a-half million people in that metropolitan area, nobody else's teeth could have made the marks. Here, the dentists were clear that when they said consistent with, they simply meant that the defendant's teeth could have made the marks. So he couldn't be excluded as having made the marks. The second point I would bring up is, which distinguishes this case. Well, I don't think it's... Well, I think there's two responses. I think it's not as powerful as you see in some of these other cases, where it's sort of presented as though it were a fingerprint or DNA evidence that precisely identified the defendant. And the second point here is that even those more limited claims, the defendant presented two of his own experts who vigorously disputed those claims and raised many of the same criticisms that the defendant's current expert now makes about the unsuitability of the autopsy photos for these purposes and about the fact that it wasn't even clear that this was a bite mark. So I think in light of those two things, I think the postconviction trial court here was right to suggest that the jury might have just sort of washed its hands of all the bite mark controversy and said, we're going to focus on the other evidence of guilt. Which leads to the third point here, which I think is important, is that there was a very strong circumstantial case of the defendant's guilt, even... That's what worries me, is the trial court made that statement, and isn't that just pure speculation and conjecture, that the jury would have done this or that? Well, I wouldn't phrase it that way. I would phrase it as, did this evidence, was it so important to the verdict that it rendered the entire trial fundamentally unfair? And so I think that's just inherent in the nature of a prejudice inquiry. It's, of course, inherent in the nature of the actual innocence inquiry, which asks, is it more likely than not that no reasonable jury would have convicted the defendant in light of the evidence? Counsel, would evidence of this wound as possibly consistent with a bite mark be admissible even today, based upon the defendant's statements? Well, I think certainly the medical examiners would be able to testify about injuries to the victim. You know, was there a wound on the shoulder? I don't know if a forensic dentist would be able to testify today that it was a human bite mark. That's a little unclear. And again, as I say, we're accepting for leave to file purposes, so the defendant's... But the wound on the shoulder is consistent with the defendant's statements. Yes, the fact that there's a wound on the shoulder... Which he indicated was a bite mark. Yes, he told several people, several witnesses testified that a few days after the murder, he testified, he told them about details of the crime. And so one of which, one detail of which was that there were teeth marks on the shoulder. But also he mentioned some other details about the crime that had nothing to do with the bite marks, about the positioning of the body, how her hands were tied behind her back, things of that nature. Is there any reason that that wouldn't come in, that the defendant himself said that the victim had bite marks, irrespective of the credibility of the scientific testimony at this point? Just the defendant's statement? I think his statement certainly could still come in. Whether or not the incriminating value of those statements could be buttressed by expert testimony of forensic dentists is another question. But again, if the defendant is granted leave to file this petition, he would have to establish, you know, at that point that the evidence has been discredited. But again, as I say, we accept for leave to file purposes that his, he's made well-pled allegations that the type of bite mark evidence presented at his trial is no longer generally accepted. And that includes not only the type of evidence that would associate a person with a particular bite, but even the type of evidence that would purport to identify a murder. And so we accept that as true for these purposes. Our sole argument today is that even putting all of that bite mark evidence to the side, there was such a considerable amount of other evidence of guilt that he just can't show the required prejudice or the required conclusivity under the actual innocence standard. And so if I could, I'd like to talk a little bit about some of this other non-bite mark evidence, which again, I think when you combine it all together, it's very powerful. We have evidence of motive. There was testimony from his friend, John Scroggins, that he had met the victim the night before she was murdered, when her and her fiancé were moving in to their new house and had some friends over. And after that meeting, he, I mean, to put it mildly, he became sort of infatuated with her. Made many comments to Scroggins afterwards about that. He even, he defended himself, even sort of mentions a similar theme in his own statement to the police about two weeks later, that he was, you know, he really wished he had been invited over to that party and wasn't. There's also evidence not only that he was in proximity to the murder, but that he had a, he had, he had the opportunity to commit the murder. He was over at his friend Paul Main's house the next day, sitting on the front porch. By his own admissions now at trial, pretty much from about 10 a.m., you know, through the evening, although he does concede that he might have gotten up a few times to leave, which would coincide with the testimony of Edna Vancell, that he had been on the front porch until around 10 and then disappeared, or excuse me, until around 11 and disappeared for an hour, which coincides with the estimated time of death given by the medical examiner. It also matches up with the testimony of Edna and Eric Moses, who happened to be driving through the neighborhood around that time. And I think this is important. They mentioned that they saw the victim in her driveway talking to a man. It looked like they were arguing. It looked like Carla got mad at the man and turned around and walked back to her house, and the man might have turned and followed her. And the man ultimately killed Carla Brown, and there was a lot of evidence that that was the defendant. I mean, at trial, defendant, between both his trial testimony and his recorded statement to Spencer Bond, he admits that he was on the front porch. He admits that he saw Carla that day in her front yard. In his statement to Spencer Bond, he even said he might have spoken with her in her driveway. So there's strong evidence that defendant was that person who was speaking to her in the driveway and then ultimately followed her back into her driveway. And then went back into her house and killed her. There's also, as I mentioned, evidence that he makes statements to his friend, Harold Pollard, later that evening, when he goes over to his house and says that Carla Brown has been murdered. And he mentions that the victim was curled up on the floor with her hands tied behind her back. There's some dispute about whether curled up on the floor is the same thing as being bent over a metal barrel, as the victim was discovered. I mean, I would argue that bent over and curled are very similar, whether she was on the floor or not, there's some difference in the terminology there. But he did mention that her hands were tied behind her back, which is another fact that at that time, only the killer would have known. Several days later, he makes statements to the Bonds and the Whites, where he tells them that the victim was found in her basement, curled up on the floor with her hands tied behind her back. And then, finally, in a curled up position, I think Spencer Bond testified that she said curled, in a curled position, stuck in a pail of water, again, tied up. So this, again, is, at that time, are details that only the killer would know. And those witnesses also testified just to a general demeanor suggesting guilt. He was nervous and agitated. He said that he had to get his story straight with Paul Main and get out of town. And then, finally, he, a former girlfriend, Susan Lutz, testified that he had once admitted to her, several years later, that he had once killed a woman. So, again, any one of these facts obviously would not suffice to prove guilt or wouldn't make out a strong case of guilt. But when you put them all together, it creates a pretty convincing picture. Circumstantial, no doubt, but a convincing picture of the defendant's guilt. And when you weigh that evidence against, as I say, the relatively limited scope of the bite mark evidence and the fact that it was vigorously contested, even at trial, the defendant simply can't show that that bite mark evidence was so important to this case that its admission alone rendered the entire trial fundamentally unfair. Let alone, as he would have to show under the actual innocence standard, that it's more likely than not that no reasonable jury would have convicted him in light of that evidence. And so, again, I would just stress that the issue here, I think, is very narrow. It's not about the validity of bite mark evidence. It's not about whether this evidence would be able to be admitted at a trial today. It's simply about whether or not, putting that evidence aside, the defendant can make the requisite showings of prejudice and conclusivity, which we don't think he can do. And, as I say, the appellate court here, instead of analyzing the claim under that rubric, under the due process rubric, it mistakenly analyzed it as a fry claim. So we would ask this court to properly analyze it as a due process claim, properly analyze the actual innocence claim, and to affirm the appellate court's judgment, rejecting the actual innocence claim, but reject that portion of the opinion that both seems to have ordered a fry hearing on remand and remanded for further proceedings on this due process claim. Thank you very much, Counsel. Thank you, Your Honor. Counsel, you're going to be splitting your time, is that correct? Okay, I was going to take 15 minutes, and my co-counsel, 5 minutes. May it please the Court, Counsel, I am joined by my client, Petitioner John Pronte, who's in the front row of the courtroom there. Your Honor, we heard today that Mr. Levin stepped up here and said, we can't show that the bite mark evidence was so important to this case. This is what the trial prosecutor said to the jury at closing argument of his trial 40 years ago. Quote, jury, you can convict based on the teeth marks. Prosecutor is now acknowledging in this court that the bite mark evidence presented at trial has been entirely discredited, deemed unreliable by the scientific community. We've said that in their briefs, they said it again here today. The trial prosecutor told the jury that the bite mark evidence was, quote, vital, should be keyed on, that Pronte's teeth are consistent with the killer. Maybe someone else in Spokane, Washington, or London, England, has got teeth like John Pronte, but that guy wasn't sitting next door. So when the prosecutor says this case isn't like all those other cases, they mention EJE, where it's 3.5 million in the metropolitan community, that's exactly what the prosecutor said. So whether the experts testified to it or not, that's exactly what they said. The trial prosecutor told anyone who would listen outside of the jury that the bite mark evidence was, quote, the big break in the case, the key factor, the nucleus of the case. Are there any other things that were said outside of the trial? I think in the unique facts of this case that, first of all, you don't have to. He said it in front of the jury, and he said it over and over again in front of the jury. But our position, and I think it's relevant in this case, is there is no arrest under any circumstances of Mr. Pronte unless bite marks are identified on this case. So we have a black and white photo, unscaled, from skin that was submerged in water, that was clearly even in the photograph shown, that was manipulated by the evidence technicians, not through any fault of their own, but there was no preservation of any of this. So is that an issue before us, his arrest? The issue clearly is whether or not that the undisputed issue is whether the repudiated science was correct or not. And that is crucial and important to the jury. And what I would say, putting aside the arrest, the words of the prosecutor to the jury and the words of the prosecutor generally are certainly relevant to this decision. And it's not because of some gotcha or some catching them saying it. It's the law. Everyone relies on, in this case, ease or eager, however we say it, from the Sixth Circuit. And everyone's agreeing that it is a due process violation if repudiated evidence was, quote, a crucial, critical, highly significant factor in the conviction. When the prosecutor himself tells the trial judge that this bite mark evidence is crucial, and he did, he was begging for the admission of that photograph when the defense attorney was objecting to it. And he said, what did the trial judge say? Oh, the famous bite mark. And the trial prosecutor said, Judge, this is crucial. This is the case. This is the evidence in the case. This is the picture in the case. Crucial. That is extraordinarily relevant. But, again, you don't even need it. He told the jury that you can convict based on the teeth marks. And I take it in the instruction to the jury that what's said by the prosecutor is not evidence. I take it that was insufficient to cure any problem. Of course it's insufficient, because it's the law under McCown, and, well, first of all, under ease, where they said, quote, if the prosecution felt that the bite mark evidence was so important, it does not take much of a cognitive leap to believe that the jury viewed it as important as well. That's what we're talking about, what the jury viewed as important. So if the prosecutor is telling the jury over and over again how important it is, it does not take much of a cognitive leap to believe that the jury believed it important. But there's more than just what the prosecutor said. The key case here is People v. McCown, which they relied on a little bit. And the key in that case is, and it gets into this whole science versus not scientific debate, is if a jury is presented with expert testimony and scientific testimony, that is really important. Because science equals truth. That's from this Court's decisions, People v. McCown. It is overwhelmingly powerful. So now we have 40 years' worth of the prosecutor, the state's attorney, telling the jury or everyone who listened how important it was, including the jury, calling it science over and over again, calling it bite mark technology over and over again to the veneer during the trial. And they talk about how they didn't treat it like a fingerprint. The prosecutor told the veneer every, almost every veneer member that bite mark evidence is just like a fingerprint. And sometimes they can match and sometimes it's consistent and whatever it is. So the jury heard this over and over and over again. And is the expert testimony the exact same in this case? No. But it gets, but what is important in this case, through process analysis, is an individual case determination. You know, my colleague is going to get up here and he's going to tell you about bite mark cases all over the country. Cases where there's DNA that proves them innocent, where there's, you know, 36 overturned convictions, whatever we want to talk about. Some of them have defense experts who testify, multiple ones. Each had two defense experts testify in that case. Some of them have this horrific analysis saying he's the only person on the planet who has teeth like this and who can make this mark. And some of them, like this one, have to be thought of, and this is what the Fifth District did very well, and said it wasn't the match that was even important in this case. What was important was the existence of the bite mark at all. Because it flows from what we have. There is no statements from Spencer Bond or Harold Pollard or Susan Lutz or any, Vicki White, or any of these people unless there is an identified bite mark. And none of them are relevant at any of the trial unless there is an identified bite mark. That's what the Fifth District said. It sealed Petitioner's faith. The mere identity of a bite mark. That's what was the damning circumstantial evidence. All these statements about Mr. Pronte saying that there was a bite mark. So whether or not his statements ultimately come in about these comments, which, by the way, every single one of them, as a reminder, four to five years after this evidence, we have loads of evidence to suggest that these were tainted memories. I mean, the whole investigation was built on this high-profile media campaign based with the assistance of the idea of a criminal profiler. So this individual would start to make statements and start to try to recreate and try to be caught in this labyrinth where he would find himself out. And that's exactly what they did to Mr. Pronte. He was trying to remember four years ago, precise times of his death. And that's why within hours or minutes. So it is entirely unreliable statements from the time. And he doesn't know. I mean, he doesn't know. He's trying to clear himself. He's calling the prosecutor. He's cooperating with every police officer who wants to talk to him. He's being recorded by Spencer Bond and even figures it out at some point that he's being, that Spencer Bond is working with the police. And he over and over again will talk to anyone and say, I didn't mention bite marks. I don't know what you're talking about. You want to keep accusing me of it. But I didn't mention bite marks. I didn't do this crime. I'm innocent, over and over again. So it's just the mere fact that there is bite marks at all that is of overwhelming importance in this case. But the other evidence, isn't that enough to establish a guilt? I mean, does this case show a cause and prejudice, meet the cause and prejudice of the case, given the other evidence? It's not. I mean, the other evidence, the other evidence that the prosecutor got up here and told you about, they said the exact same thing to the Fifth District. The Fifth District considered everything they just said, opportunity, motive, the shifting accounts. What they found, far from sufficient evidence of guilt. And that is absolutely the case. Every one of these statements, I cannot say enough, surfaced four years after the incident at question. If John Scroggins thought it was so important that John Parente called the woman he saw beautiful or commented on her body and viewed it as some sort of obsession, which I don't even think he denies that he commented that she was a good-looking lady. You know who else did? The trial prosecutor told everyone how beautiful this woman was, too. If John Scroggins viewed that as anything more than a young man commenting on a beautiful woman, don't you think he would have said something to the police in the days after the murder? He was, in fact, talked to. He didn't mention a thing about John Parente having an obsession or being a motive to murder her. If the State gets up here and talks about this, that, and I think they're talking about misrepresentation of the case, Eric Moses, who for sure must have seen John Parente, Eric Moses was six years old. Six years old. That's the overwhelming evidence that they're talking about? The woman he was with, the grandmother, she was hypnotized before she even gave a statement. We're talking about a uniquely horrific investigation in this case that uses every sort of bad investigative technique imaginable, from bite marks, criminal profiling, psychics, and hypnosis. That's what we're talking about that led to these types of statements that the State says is so sure of their guilt. We're talking about Harold Pollard. Harold Pollard who says that he gets up there and says that only John Parente was the one who said the hands were tied behind her back. Hands tied behind her back, he said that five years later, Harold Pollard was immediately put into drug rehab. And guess what? Look at page C256 of the record. Harold Pollard, I think it's 256. Harold Pollard said that after that very fact was widely known in the media. It's in the newspaper article right there. Harold Pollard never said that before. Anything that surfaced in this case was contaminated by the investigation in and of itself. And that's my analysis. Is that basically just put in there by the appellate court to advise the trial court on remand, how to deal with the case? Look, thank you for the question. Sorry for being cavalier. But what the prosecutor is forgetting, and it was a different prosecutor, so I'm not blaming him, and thank you to the AG for simplifying this case and acknowledging finally that bite and relied on it. That's not what happened in the Fifth District. That's not what happened when they asked you to take this case. They kept saying people v. Malone, people v. Malone, people v. Malone. It can't be a due process violation because it was admissible evidence, and it's still admissible today. They've abandoned that argument. But this whole idea of whether or not it would have been admissible under Frye, or whether we could have, whether Mr. Conte and his attorneys could have made a Frye challenge at the time of the trial, of course they couldn't. People v. Malone was the law of the land. Of course they would have lost. So there's absolutely no problem. I don't care if you excise that part of the decision or not. I mean, if we want to go back. But there is no, absolutely no, sorry, excuse me, I lost my train of thought, but there is no, there is absolutely no dispute, there is no problem with the Fifth District, like, unpacking Malone and the basis for its decision and determining whether or not it could meet a reliability standard at all, which is all we're talking about. But whether you call it Frye or whether you call it something else, the evidence isn't reliable. And they're not going to be proffering unreliable evidence, whether it's scientific or not. I mean, whether it meets Frye or not. They're not going to go into court and say, jury, rely on this unreliable evidence. And if they did, that in and of itself is a due process violation. So I think it's neither here nor there. I've called it a red herring. I've been listening to this argument for a year now. I still don't understand it. I don't know what it's about. So I think I'm going to turn it over to my colleague, if that's okay. Mr. Fabrikant. Thank you. Good morning, Your Honors. I'm Chris Fabrikant from the Innocence Project. One thing that came up that I just wanted to mention quickly about the arrest is that when you think about the people when they were bringing this case and they were thinking about the quantum of guilt that was available, they didn't make the arrest until they had the bite mark evidence. So from their own analysis prior to bringing this indictment, they needed the bite mark evidence to even make the arrest. This is because there is no more persuasive evidence than scientific evidence. No more persuasive witness than an expert witness. It offers a truth that lay jurors themselves cannot divine. It's a special claim of trust and reliability that an expert witness makes on a jury. It's supposed to be objective. It's supposed to be arm's length from the proceedings. It's the only witness where the judge allows the credentials of that witness to be paraded in front of the jury, to declare that person an expert witness, and say, this person you can rely on, this person's opinions. This is the only witness you're going to have that's going to be allowed to offer an opinion. And lay jurors, when that happens, the research demonstrates, turn off their critical thinking skills. Because they want to know what happened. They're trying to divine the truth. And science offers a truth. That's why we have it in advertising. Scientifically tested. Demonstrated reliable. That's because it's very persuasive. And we know how persuasive it is, because when it's unreliable, forensic science corrupts the truth-seeking system. I mean, junk science. Unreliable forensic science corrupts the truth-seeking function of criminal trials. And we know this because half, half of all wrongful convictions are attributable, at least in part, to the misapplication. Misapplication of forensic sciences. That evidence was so overvalued by jurors that they convicted the innocent. Half. And bite mark evidence is uniquely overrepresented in those groups of cases. Very, very rarely used bite mark evidence. And yet there are 35 known wrongful convictions and indictments attributable to the use of this technique. Thirty-five. I've personally litigated eight of these. All innocent. You know, the requirement and the standard for a successive post-conviction petition is very high. And here in this case, the bite mark evidence did not stand alone. I mean, there was other evidence, you know, about statements that the defendant made in culpatory evidence. Evidence of motive. Apparent knowledge of some of the details about the crime scene. And inconsistent evidence about where he was during the murder. I mean, there's all this other evidence. And so given that and the nature of post-conviction petitions allowance, with all that other evidence, where's the prejudice? You know, bite mark evidence can be used to depict the defendant as an animal. There's no ever, never an innocent explanation for a bite mark. Unlike fingerprints, unlike DNA, is that these are putting the defendant's teeth on the victim's body. I understand that, but there's other evidence. So the state pointed to some of the other cases, some of the cases that have actually litigated. And in every one of those cases, there was some other evidence. These defendants were not picked out of phone books. There was reasons to suspect them. Every one. Every single one. Right? Eddie Lee Howard, that came up. Eddie Lee Howard lived in the neighborhood. He had a sex offense. He was supposed to have been interested in the complaining witness or the victim in that case. Ray Crone, sentenced to death in Arizona. The last person that was seen alive with the victim had expressed interest in her. She had his phone number in her purse. He was innocent. He was sentenced to death. Death. And he was also, like Mr. Ponte had, a defense expert in that case. On both times they had a defense expert. Ray Rawson, one of the original bite mark experts, twice testified, twice convicted, and sentenced to death. Kennedy Brewer. He was sentenced to death. Richard Suveron in that case, one of the founding fighters. Right. And I was explaining how there was also other evidence in all these other cases. And that it's very rare that you just find a body in a field and you find some teeth and you match them to it. There was other evidence in this case, but they were overwhelmed by the bite mark evidence. The bite mark evidence has always been key. It can't be ignored. It's all the scientific research that demonstrates that, the way the social science research demonstrates how valued this type of evidence is. We have two issues before us that were really clear here. There's a cross appeal here. First issue is whether or not this project could even file a successive post-conviction petition. He had filed others, and now he's trying to file a new one. But the second issue was, that I think you're discussing now, is whether or not he should be allowed to file a claim of actual innocence. A different idea totally. Correct? Right. What is the standard for us to determine whether or not he should be even allowed to file the claim for actual innocence? I think that we're at the first stage, the proceeding. I'm going to have to ask my co-counsel, because I'm not a local practitioner. Why don't we do this? I'm going to ask you, if you don't have any other questions, allow the state to respond. Since this is a cross appeal, I'll ask you to answer just that one question. What is the standard for being allowed to file, we understand the PC, but the actual innocence claim? You can respond to that after the state presents their vote. Thank you very much. Thank you. Thank you, Your Honor. I'd like to make a few brief points. Justice Tice, with respect to the question you just asked about actual innocence versus due process. The actual innocence claim requires an even higher showing. The due process prejudice inquiry asks whether the evidence was of such crucial, critical or high significance that it rendered the entire trial fundamentally unfair. Even if he could make that showing, it wouldn't necessarily mean that he could make the required showing under the actual innocence test. And for leave to file purposes, that test asks whether or not the defendant has presented new, material, non-cumulative evidence that raises the probability that it's more likely than not that no reasonable jury would have convicted him. And so even if the court were to find that the evidence was significant enough that it rendered the trial fundamentally unfair, it wouldn't necessarily be the case that without the testimony, no reasonable jury would have convicted him. So there are different analyses for those two claims. Responding briefly to a few things that my friends on the other side have said, we don't dispute that the prosecutor's own view of the importance of the evidence as expressed to the jury or the fact that that evidence was important to the charging and investigation. We don't dispute that that's the court can consider it. The courts in Eage or Egge out of the Sixth Circuit noted that fact. The Texas Court of Criminal Appeals in Cheney noted that fact. But it's not dispositive. Egge itself also looked at two other things. It noted that the court must look at the relative influence of the non-bitemark evidence, meaning you have to look at the other evidence of guilt, which we've gone through at length in the briefs and today. And Eage also said that you must assess the effect of the bitemark evidence in light of any defense rebuttal testimony. In Eage or Egge, the court found that that rebuttal testimony didn't cure the harm of the State's bitemark evidence, because in that case, you had an expert saying that of the three and a half million people in that area, nobody else's teeth could have made this mark. And the court there noted that the defense experts did not directly refute that probability assessment. Here, in contrast, the defendant's experts directly refuted the prosecution expert's opinions that these were bitemarks. One of the experts said that he couldn't find any evidence to even substantiate that they were bitemarks. Another, the other expert said he didn't think they were bitemarks either. They testified that, you know, these could have been bitemarks, but they could have been other things as well. And so the understanding today that forensic dentists don't or can't consistently identify marks as human bitemarks, that would have been readily apparent to the jury. You had two experts on one side and two experts on the other, all of whom were presented as experts. So it's not a case where simply the people's experts were presented with a sort of veneer of scientific credibility, whereas the defense experts were. These were all, all four of these dentists were qualified and presented to the jury as experts in this field. You know, the other side seems to indicate that if you take away the bitemark evidence, then there's claims of actual innocence, it appears. I don't think that's the case, Your Honor. The new evidence here, which is the scientific understanding that this type of bitemark testimony is not reliable, when you take that out of the picture, as I say, there's still a wealth of corroborating evidence that, considered together, paints a convincing picture of the defendant's innocence, or excuse me, of the defendant's guilt. And so he can't prevail on an actual innocence claim, he can't prevail on a due process claim. I think you're exactly right when you note that when we get to the prejudice part of this inquiry, or we get to the conclusivity part of this inquiry, each case has to be looked at on its own facts. Each case will be different in terms of what the particular bitemark testimony was. Each case will be different in terms of whether or not there were experts, and what those opposing experts, and what those opposing experts said. And each case will be different in terms of what the other evidence was, and how important of a role the bitemark evidence played, relatively speaking. Counsel, as far as the defendant making a statement about bitemarks, when did that first occur? Was it during the early stages of the investigation, or was it four years later, or does it matter? Well, the witness testimony, the testimony of Spencer Bond, and Mark and Vicki White, is a witness testimony. The evidence is that the defendant made those statements to them around three days after the murder. It's true that those witnesses did not themselves report that statement until many years later. So that is true, they did not come forward with this evidence until the presence, or what was thought to be the presence of bitemarks was made known to the public through media coverage. But the, but that was all litigated at trial. The defense, in closing argument, you know, argued that those witnesses, and Pollard as well, shouldn't be believed because they didn't come forward immediately and make these statements. But that's just sort of a classic credibility contest that's present in many cases. It was made here, and evidently the jury, you know, discredited the defendant's argument on that score. But accepting their testimony as true, the defendant made the statements very soon after the offense. And so if there are no further questions, again, oh, actually, I do have one brief point. My friend on the other side mentions People v. McCown. Again, I would point out, that was a fry, that was, you know, explicitly a fry case. That was not a due process claim in a successive post-conviction petition. So again, the proper inquiry, as we've mentioned, is to analyze this under the due process rubric. Thank you, Your Honor. Thank you very much, Counsel. Counsel for the appellate has stated to us what the standard is in terms of filing an actual innocence claim. I raise the question of what that legal standard is. I don't know if you know that or not, but what is the standard? Yes, Your Honor. I'll limit my discussion to that question. Thank you for the opportunity. The standard for both the actual innocence claim at this stage of the process and the due process claim is actually, it's a different substantive standard, but it is the identical leave-to-file standard. We have not been granted leave-to-file, either the due process or the actual innocence claim. And what that standard is, and what has been totally left out of, frankly, my argument or the State's, is that is a prima facie showing. That's all our burden is at this point. And with the narrowness of this dispute on prejudice, the only thing we have to show is a preliminary showing, a prima facie showing, that the, that we can show prejudice and, or conclusivity, as they refer to it under actual innocence, because those are the only disputed issues. So what is a prima facie case? At this point, my question to you was what is the standard? And I appreciate your argument, and at this point, the Supreme Court will take this case under advisement. Thank you very much, both.